**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Virginia Tognocchi,** | ) | **Civil Action No.:__________** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| ______________________________ | ) | |

**COMPLAINT**

1. This is an action brought by Plaintiff, Virginia Tognocchi, for actual, statutory and punitive damages, attorney's fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

8. This Court has Jurisdiction under the FCRA, 15 U.S.C. §1681p, and 28 U.S.C. §1331.

9. Venue is proper in the Florence Division because the Plaintiff resides in Horry County, and the Defendant transacted business in this division.

## PARTIES

10. Plaintiff, Virginia Tognocchi, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

11. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

12. Defendant Equifax is a credit reporting agency ("CRA") as defined by the FCRA, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

13. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

14. Defendant's acts and omissions alleged herein are in violation of the FCRA which

requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

15. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report. Defendant also disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

16. In January 2026, Plaintiff contacted her bank, Bank of America ("BAC"), for the purpose of consolidating three credit card accounts she had with them. Plaintiff talked with a customer service representative and was shocked to learn that one of the credit cards, Bank of America credit card, Account No. 5524336129205823, (hereinafter referred to as the "Account"), had a balance of over $16,000.00. Plaintiff was confused as she had paid off that particular card in full in March 2025 and it had a zero balance. Plaintiff had not used the Account since paying it off and she had not received any statements on the Account since March 2025. Plaintiff had no knowledge of any charges made to the Account or that there was a balance.

17. Plaintiff informed the BAC customer service representative that she had not made any charges on the Account after she paid it off in March 2025. Accordingly, Plaintiff was

immediately transferred to BAC's Fraud Department regarding a charge of $13,499.00 that had been made to Pathly Offer in St. Petersburg, Florida. The charge was made on March 27, 2025. The remainder of the balance due on the Account was for late fees and interest that had accrued on the fraudulent charge.

18. Plaintiff did not make the charge to Pathly Offer. Plaintiff had never even heard of Pathly Offer, and she had no knowledge of what type of company it was or what services it offered.

19. On February 18, 2026, Plaintiff filed a police report with the Horry County Police Department regarding the fraudulent charge on the Account.

20. On May 19, 2026, Plaintiff obtained a copy of her Equifax credit report. In reviewing her credit report, Plaintiff discovered that Bank of America was inaccurately reporting the Account as a charged-off account with a balance of $16,636.00 Additionally, other information was reporting on her credit report that was inaccurate and/or did not belong to her.

21. On or about May 19, 2026, Plaintiff sent Defendant a dispute letter ("**First Dispute Letter**") stating she had obtained a copy of her credit report and discovered an inaccurate account reporting. Specifically, Plaintiff disputed the Account as fraudulently used without her knowledge or permission. In her letter, Plaintiff provided Defendant her full Social Security number, date of birth, and address. Plaintiff also provided Defendant a copy of the police report she filed regarding the fraudulent use of the Account and a copy of her driver's license.

22. Defendant received Plaintiff's dispute on May 23, 2026.

23. Defendant did no actual reinvestigation of Plaintiff's May 19, 2026, dispute, but simply forwarded Plaintiff's dispute to BAC via an Automated Consumer Dispute Verification (hereinafter "ACDV").

24. Upon receipt of BAC's verification of the Account, Defendant continued reporting the inaccurate Account on Plaintiff's Equifax credit file.

25. On or about May 24, 2026, Defendant sent Plaintiff a letter informing her it was not able to remove the information Plaintiff disputed on her Equifax credit report based on the documents she provided. Defendant stated that in order for it to block the Account due to identity theft, Plaintiff would need to send proof of her name, current address, and Social Security number. Plaintiff was also informed she would need to identify the information reporting on her credit report that was the result of identity theft, provide a statement that the information on her credit report did not relate to any transaction made by Plaintiff, and provide a copy of a completed FTC Identity Theft Report.

26. At the time Defendant sent this letter, Plaintiff had already provided Defendant proof of her name, current address, social security number, and a valid police report.

27. On or about May 28, 2026, in response to Plaintiff's May 19, 2026, dispute, Defendant sent Plaintiff its Investigation Results. In those results, Defendant informed Plaintiff that its investigation concluded that the item belonged to Plaintiff. Defendant did not provide Plaintiff a copy of her updated credit report with its investigation results.

28. On or about June 16, 2026, Plaintiff sent Defendant a second dispute letter ("**Second Dispute Letter**"), wherein Plaintiff informed Defendant she had received its Investigation Results, but the Account continued to be reported inaccurately. Plaintiff

again specifically informed Defendant the Account had a zero balance when the fraudulent charge to Pathly Offer was made in St. Petersburg, Florida. With her letter, Plaintiff again included a copy of her driver's license and the police report she filed regarding the fraud.

29. Defendant received Plaintiff's second dispute letter on June 20, 2026.

30. Again, Defendant did no actual reinvestigation of Plaintiff's June 16, 2026, dispute, but only forwarded Plaintiff's dispute to BAC via an ACDV.

31. Upon receipt of BAC's verification of the Account, Defendant simply accepted BAC's response despite receipt of Plaintiff's police report regarding the fraudulent use of her Account.

32. Thereafter, on or about June 21, 2026, Defendant sent Plaintiff a letter informing Plaintiff it was not able to remove the information on Plaintiff's Equifax credit report based on the documents she provided, and that in order for Defendant to block the Account due to identity theft, Plaintiff would need to send proof of her name, current address, and Social Security number. Defendant also insisted that Plaintiff identify the information reporting on her credit report due to identity theft, provide a statement that the information on her credit report did not relate to any transaction made by Plaintiff, and provide a copy of a completed FTC Identity Theft Report.

33. On or about June 24, 2026, Defendant sent Plaintiff its Investigation Results to Plaintiff's June 16, 2026, dispute, wherein Defendant stated that Plaintiff "indicated that the Account was open fraudulently. Our investigation concluded that the item belongs to you." Accordingly, the Account continued to be reported on Plaintiff's Equifax credit file.

34. Plaintiff never disputed the Account as fraudulently opened in her name.

35. On or about August 10, 2026, Plaintiff sent Defendant a third dispute letter ("**Third Dispute Letter**"). In this letter, Plaintiff stated she had received Defendant's Investigation Results wherein Defendant stated Plaintiff had disputed the Account as "fraudulently opened." In her letter, Plaintiff informed Defendant she had never disputed the Account as being fraudulently opened. Rather, she had specifically stated that the Account was her account that had been paid in full and had a zero balance until a fraudulent charge of $13,499.31 to Pathly offer was made in March 2025, in St. Petersburg, Florida. Plaintiff stated she had repeatedly notified BAC that the charge was fraudulent and she did not owe the balance. Plaintiff included her full Social Security number, date of birth, and address in the letter. Plaintiff also included a copy of her driver's license, Social Security card, and the police report she filed with her letter.

36. On or about July 30, 2026, Defendant sent Plaintiff a letter informing Plaintiff a fraud alert had been added to her Equifax credit file.

37. Defendant received Plaintiff's third dispute on August 15, 2026.

38. On or about August 18, 2026, Defendant sent Plaintiff its Investigation Results to Plaintiff's August 10, 2026, dispute, wherein Defendant informed Plaintiff it had finally removed the Account from her Equifax credit report.

39. Unfortunately, less than two months later on October 15, 2026, Defendant sent Plaintiff a letter informing her that the furnisher of the Account requested to have the Account reinserted on Plaintiff's Equifax credit file and submitted a certification stating that the Account is accurate and belongs to Plaintiff.

40. Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's

disputes.

41. Defendant repeatedly failed to block the Account after multiple receipts of Plaintiff's valid police report.

42. Upon receipt of the ACDV responses from BAC of the disputed Account information, Defendant simply accepted BAC's verifications of the Account and did not undertake to perform any reinvestigation of its own.

43. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Trans Union Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. Trans Union*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

44. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

45. Defendant's knowing and repeated violations of the FCRA warrants an award of

punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

46. While Defendant was reporting the false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports were viewed by Elan Financial Services, Citibank NA, Caliver Beach Mortgage, LLC, Citi Cards CBNA, Imerge LLC, All Risks, Limited, Range View Management LLC, The Home Depot – Citi NA, Dr. Leonard's, Ginny's City First Mortgage Services, Verizon, MCM Holdings, Inc.. Beauty Boutique, Verizon Wireless, Walter Drake, Capital Lending Group Inc, Capital One Bank USA NA, USBank N.A., Kin Insurance, Capital One National Assoc, Miles Kimball, and Capital One.

**<u>COUNT ONE</u>**
(Fair Credit Reporting Act)

47. The Plaintiff adopts the averments and allegations of paragraphs 16 through 46 hereinbefore as if fully set forth herein.

48. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

49. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, inability to focus, constant distraction, lack of energy, depression, headaches, loss of enjoyment of life, time spent trying to fix her Equifax credit report, the exacerbation of her Rheumatoid Arthritis, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

51. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Plaintiff is entitled to her attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## COUNT TWO
(Fair Credit Reporting Act)

54. The Plaintiff adopts the averments and allegations of paragraphs 16 through 53 hereinbefore as if fully set forth herein.

55. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of

fraudulent information, as required by 15 U.S.C. §1681c-2(a).

56. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

57. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

58. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, lost credit opportunities, anxiety, worry, fear, loss of sleep, inability to focus, constant distraction, lack of energy, depression, headaches, loss of enjoyment of life, time spent trying to fix her Equifax credit report, the exacerbation of her Rheumatoid Arthritis, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out-of-pocket expenses.

59. Plaintiff is entitled to statutory or actual damages in an amount to be determined by the jury.

60. In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

61. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

62. Plaintiff is entitled to her attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against

Defendant for the following:

A. Actual and/or statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D. For this trial to be heard by a jury; and

E. For such other and further relief as the Court may deem just and proper.

*s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492